William M. Audet (CA State Bar #117456)
waudet@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.576.1776

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NICOLE BAKER,
Plaintiff,

vs.

BAYER HEALTHCARE PHARMACEUTICALS INC.,
Defendant.

**Case No.: C:13-00490-TEH**

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

Plaintiff Nicole Baker ("Plaintiff"), by and through the undersigned attorneys, hereby brings this cause of action for personal injuries suffered as a proximate result of Plaintiff being prescribed and using the defective and unreasonably dangerous birth control product called "Mirena" (levonorgestrel-releasing intrauterine system). At all times relevant hereto, Mirena was manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendant Bayer Healthcare Pharmaceuticals, Inc. ("Bayer" or "Defendant").

//

//

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiff and the Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant does business in the Northern District of California.

**PARTIES AND CITIZENSHIP**

3. At all relevant times hereto Plaintiff Nicole Baker ("Plaintiff") was a resident and a citizen of the State of California.

4. Plaintiff used the Mirena, and has suffered injury as a result, and incurred medical and other expenses.

5. Defendant Bayer Healthcare Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6 West Belt Road, Wayne, New Jersey 07470. Defendant Bayer Healthcare Pharmaceuticals, Inc., can be served with process through its registered agent for service of process in California, Corporation Service Company, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 95833.

6. Defendant Bayer Healthcare Pharmaceuticals, Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc. Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Bayer Healthcare Pharmaceuticals, Inc.

7. Defendant Bayer maintains a research laboratory in Berkeley, California. According to Bayer's website, "Research and development expenses in the Pharmaceuticals segment amounted to €1,566 million (2011: €1,556 million), or 14.5% (2011: 15.6%) of segment sales. Our research and development outlay underscores our focus on growth through innovation. Drug discovery in the Pharmaceuticals segment is concentrated in the areas of cardiology and oncology, along with gynecological treatments and hematology."

8. Defendant Bayer Healthcare Pharmaceuticals, Inc. has a U.S. Innovation Center at the University of California, San Francisco where it conducts pharmaceutical research.

9. Defendant Bayer Healthcare Pharmaceuticals Inc. is the holder of the approved New Drug Application for Mirena.

10. Bayer is in the business of designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing prescription drugs and women's healthcare products, including the intrauterine contraceptive system, Mirena.

11. Bayer does business in California through the sale of Mirena and other prescription drugs in the state and through its research laboratories in Berkeley, California and San Francisco, California.

12. At all times relevant, Defendant was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, Mirena.

**FACTS**

13. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

14. Mirena is an intrauterine system that is inserted by a healthcare provider during an office visit. Mirena is a T-shaped polyethylene frame with a steroid reservoir that releases 20 μg/day of levonorgestrel, a prescription medication used as a contraceptive.

15. The federal Food and Drug Administration ("FDA") approved Defendant's New Drug Application for Mirena in December 2000.

16. The system releases levonorgestrel, a synthetic progestrogen, directly into the uterus for birth control. Defendant admits it is not known exactly how Mirena works, "but provide that Mirena may thicken cervical mucus, thin the uterine lining, inhibit sperm movement and reduce sperm survival to prevent pregnancy."

17. Mirena is designed to be placed within seven (7) days of the first day of menstruation and is approved to remain in the uterus for up to five (5) years. If continued use is desired after five years by the patient, the Mirena must be replaced. The Mirena labeling recommends that Mirena be used in women who have had at least one child.

18. Mirena's label does not warn about spontaneous migration of Mirena, but only states that migration may occur if the uterus is perforated during insertion. Mirena's label also describes perforation as an "uncommon" event, despite the numerous women who have suffered migration and perforation post-insertion and other adverse events, clearly demonstrating this assertion to be false.

19. Mirena's labels, packaging and warnings do not accurately warn and understate the risk of perforation, embedment, infections, cysts ectopic pregnancy, intrauterine pregnancy, adhesions, fetal injury and fetal death caused by Mirena.

20. Defendant did not effectively test the Mirena before putting it on the market. Defendant did not properly analyze results from pre-market testing of the Mirena.

21. Defendant has promoted Mirena through social media and online sources. Defendant understated the severe risks of Mirena in its social media marketing campaigns, including, but not limited to, migration, perforation, cysts, ectopic pregnancies, intrauterine pregnancies, adhesion, fetal injury, fetal death, as well as other severe injuries.

22. In March 2009, the Department of Health and Human Services' Division of Drug Marketing, Advertising, and Communications (DDMAC) issued a warning regarding Defendant's advertising materials for Mirena, stating that they constituted a misbranding of Mirena.

23. The DDMAC specifically noted that Bayer did not communicate any risk information, inadequately communicated Mirena's indications, and overstated the efficacy associated with the use of Mirena in Bayer-sponsored internet searches.

24. In December 2009 Defendant was again contacted by DDMAC, this time regarding Bayer's "Mirena Simple Styles Statements Program" ("Simple Styles program"), a consumer-directed live presentation directed towards "busy moms". The presentations were

done in the home of the consumer with a representative from "Mom Central", a social networking site, and Barb Dehn, a nurse practitioner. These presentations were done in coordination and partnership with the Defendant. The Simple Styles program was presented as a lifestyle event, but was in fact a way for the Defendant to promote and sell Mirena.

25. The Simple Styles script stated that Mirena can help patients "look and feel great." The DDMAC noted were unsubstantiated since Mirena can cause weight gain, acne, and breast pain or tenderness.

26. The DDMAC also noted that the Simple Styles script represented that Mirena would increase levels of intimacy, romance and emotional satisfaction between partners, when in fact these claims were unsubstantiated.

27. The Simple Styles script omits information relating to serious risks and conditions including susceptibility to infections and possible miscarriages or ectopic pregnancies should a woman become pregnant on Mirena.

28. Defendant concealed their knowledge of the defects in their products from the Plaintiff, her physicians, hospitals, pharmacists, the FDA and the public in general.

**Summary of Plaintiff's Injuries**

29. Plaintiff had the Mirena inserted on January 6, 2010 at Community Physicians Network for Women in Indianapolis, Indiana by her healthcare provider, Georgia Steiman. Plaintiff chose the Mirena because it was promoted as a safe and effective method of birth control.

30. On June 21 2011, after suffering from extreme pelvic pain, Plaintiff was rushed to the emergency room ("ER") at Parkview Community Hospital in Riverside, California. She received treatment for abdominal pain.

31. On June 28, 2011 Plaintiff went to the ER at Riverside Community Hospital in Riverside, California for sharp pains on her left side. An ultrasound showed a left ovarian cyst. Plaintiff was treated for her pain.

32. On September 3, 2011 Plaintiff went to the ER at Parkview Community Hospital for severe abdominal pain, nausea and pain associated with an ovarian cyst.

33. On October 10, 2011 Plaintiff was again rushed to the ER at Riverside Community Hospital for extreme pelvic pain, and noted that her pain level was a 7 out of 10. Plaintiff had a urinary tract infection, a fever and leukocytosis.

34. Plaintiff's Mirena was expelled on October 20, 2011. After expulsion, Plaintiff continued to suffer from vaginal bleeding, pelvic pain, and pain when urinating and other injuries. Prior to having the Mirena, Plaintiff did not suffer from these injuries.

35. As alleged herein, as a direct and proximate result of the Defendant's negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the Mirena, the Plaintiff suffered severe injuries, including, but not limited to, abdominal pain, cyst, infections and has endured substantial mental and physical pain and suffering. She has incurred medical expenses for treatment and care, and will continue to incur expenses in the future.

## FIRST CAUSE OF ACTION:

## NEGLIGENCE

36. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

37. Defendant had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Mirena into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

38. Upon information and belief, Defendant failed to use reasonable care in designing, researching, supplying, manufacturing, promoting, distributing, testing, warning, marketing and the sale of Mirena in that they:

a. negligently failed to properly and thoroughly test Mirena before releasing the drug to market;

b. negligently failed to properly and thoroughly analyze the data resulting from the premarketing tests of Mirena;

c. negligently failed to conduct sufficient post-market testing and surveillance of Mirena so as to avoid the risks and side effects of Mirena;

d. negligently designed, manufactured, marketed, advertised, distributed, and sold Mirena to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of Mirena and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e. negligently failed to exercise due care when advertising and promoting Mirena;

f. negligently failed to warn Plaintiff before encouraging Plaintiff to use Mirena for birth control purposes, either indirectly or directly, orally or in writing, about the need for more regular medical monitoring than usually to ensure the discovery of potentially serious side effects;

g. negligently failed to adequately warn the Plaintiff, other Mirena users, physicians and the FDA of the serious side effects of Mirena, including but not limited to, migration, perforation, embedment, ectopic pregnancies, intrauterine pregnancies, infections, adhesions, cysts, fetal injury and fetal death;

h. negligently under-reported, underestimated and downplayed the serious dangers of Mirena; and

i. negligently continued to manufacture, market, advertise, and distribute Mirena after Defendant knew or should have known of its adverse effects.

39. A reasonable manufacturer would or should have known that the aforementioned risks created by Mirena are unreasonably greater than that of other contraceptives and that Mirena has no clinical benefit over such other contraceptives that compensates in whole or part for the increased risk.

40. Despite the fact that Defendant knew or should have known that Mirena caused unreasonably dangerous side effects, Defendant continued and continue to market, manufacture, distribute and/or sell Mirena to consumers, including Plaintiff.

41. Defendant's negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which they suffered and/or will continue to suffer. Defendant knew or should

have known that consumers, such as the Plaintiff, would foreseeably suffer injury as a result of the Defendant's failure to exercise ordinary care, as discussed above.

42. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

43. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

44. WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**SECOND CAUSE OF ACTION:**

**STRICT LIABILITY**

**Manufacturing Defect**

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

46. The Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold Mirena and did, reach Plaintiff without substantial change in the condition in which it was sold.

47. Since the Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff, Defendant is strictly liable for the injuries sustained by the Plaintiff.

48. The Mirena was expected to, and did, reach consumers, including the Plaintiff, without substantial change in the condition that it was produced, manufactured, sold, distributed, and marketed by the Defendant.

49. Defendant has introduced a product into the stream of commerce which is dangerous and unsafe in that the harm of Mirena outweighs any benefit derived therefrom. The unreasonably dangerous nature of Mirena caused serious harm to Plaintiff.

50. When placed into the stream of commerce, the Mirena contained manufacturing defects which rendered the product unreasonably dangerous. Mirena's manufacturing defects occurred while the product was in the possession and control of the Defendant in ways which include but are not limited to:

a. when placed in the stream of commerce, Mirena contained manufacturing defects which rendered the product unreasonably dangerous;

b. the Mirena's manufacturing defects occurred while it was in the possession and control of the Defendant;

c. the Mirena's manufacturing defects existed before it left the control of the Defendant;

d. the Mirena was not made in accordance with the Defendant's specifications or performance standards.

51. Mirena is defective in its design or formulation in that it is not reasonable fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associate with its design and function. These risks include, but are not limited to, perforation, migration, embedment, ectopic pregnancy, intrauterine pregnancy, adhesions, cysts, fetal injury, fetal death and infections.

52. Defendant manufactured, marketed, promoted and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by the Plaintiff.

53. Defendant knew and, in fact, advertised and promoted the use of Mirena despite their failure to test or otherwise determine the safety and efficacy of such use. As a direct and proximate result of the Defendant's advertising and widespread promotional activity, physicians began commonly prescribing this product as safe and effective.

54. Despite the fact that evidence existed that the use of Mirena was dangerous and likely to place users at serious risk to their health, Defendant failed to disclose and warn of the health hazards and risks associated with the Mirena and in fact acted to deceive the medical community and public at large, including all potential users of Mirena by promoting it as safe and effective.

55. Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

56. The Plaintiff was prescribed and used Mirena for its intended purpose. The Plaintiff could not by the exercise of reasonable care have discovered the Mirena's defects and avoided the danger.

57. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

58. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

**Design Defect**

59. Defendant was and is engaged in the business of selling Mirena in the State of California.

60. The Mirena manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendant was expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

61. The foreseeable risks associated with the design or formulation of the Mirena include, but are not limited to, the fact that the design or formulation of Mirena is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

62. Defendant did not sufficiently test Mirena to avoid dangerous side effects, including but not limited to, perforation, migration, embedment, ectopic pregnancy, intrauterine pregnancy, adhesions, cysts, fetal injury, fetal death and infections.

63. Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by the Plaintiff.

64. Defendant placed Mirena into the stream of commerce with wanton and reckless disregard for the public safety.

65. Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

66. There are contraceptives on the market with safer alternative designs in that they provide equal or greater efficacy and far less risk.

67. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

68. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

**Failure to Warn**

69. Mirena is defective and therefore unreasonably dangerous and defective due to inadequate warnings and testing.

70. When Mirena left the possession of the Defendant, Mirena's labeling failed to adequately warn consumers and prescribers of, among other things, the risk of migration embedment, ectopic pregnancies, intrauterine pregnancies, adhesions, cysts, fetal injury as well as physical pain, mental anguish, and future high risk pregnancies and infertility.

71. Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold and otherwise released into the stream of commerce the pharmaceutical, Mirena. Defendant directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Mirena.

72. Mirena was under the exclusive control of Defendant and was unaccompanied by appropriate warnings regarding all of the risks associated with its use. The warnings given did not accurately reflect the known or scientifically knowable risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians.

73. The promotional activities of Defendant further diluted or minimized the warnings given with the product. Defendant's marketing, social media campaign and Simple Styles programs downplayed the serious and dangerous side effects of Mirena to encourage sales of the product; consequently, Defendant placed its profits above its customers' safety.

74. Defendant's marketing through the Mirena Simple Styles program omitted information relating to serious risks and conditions including, but not limited to, the susceptibility to infections and possible miscarriages or ectopic pregnancies should a woman become pregnant on Mirena.

75. Defendant's marketing campaigns did not communicate risk information, inadequately communicated Mirena's indications, and overstated the efficacy associated with the use of Mirena in Bayer-sponsored internet searches.

76. Mirena was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it. Even though Defendant knew or should have known of the risks associated with Mirena, it still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

77. Plaintiff used Mirena as intended and as indicated by the labeling or in a reasonably foreseeable manner. Plaintiff could not have discovered any defect in Mirena through the exercise of reasonable care.

78. Defendant, as manufacturers of pharmaceutical drugs, is held to the level of knowledge of an expert in the field. Defendant had knowledge of the dangerous risks and side effects of Mirena.

79. Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to her or her physician(s). Had the Plaintiff received adequate warnings regarding Mirena, she would not have had the device implanted.

80. Defendant had a continuing duty to warn consumers, including Plaintiff and her physicians, and the medical community of the dangers associated with Mirena. By negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendant breached their duty.

81. Defendant did not provide physicians or doctors prescribing Mirena with adequate warnings and instructions concerning the use of Mirena. Physicians therefore did not have sufficient information to properly inform patients and Plaintiff of the risks and dangers associated with the Mirena.

82. Although Defendant knew, or were reckless in not knowing, of the defective nature of Mirena, they continued to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, distribute and sell Mirena without providing adequate warnings and instructions concerning the use of Mirena so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Mirena.

83. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

84. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## THIRD CAUSE OF ACTION:

## BREACH OF IMPLIED WARRANTY

85. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

86. Defendant placed the Mirena in the stream of commerce in a defective, unsafe and dangerous condition. The Mirena was expected to and did reach users, including Plaintiff and her physicians, without substantial change in the condition in which it was sold.

87. Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold Mirena as safe for use by the public at large, including Plaintiff, who used Mirena. Defendant knew the use for which its product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

88. Defendant impliedly warranted that Mirena was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used to Plaintiff, other Mirena users, physicians and healthcare providers.

89. Mirena was not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous, not of merchantable quality, defective and unfit for the ordinary purpose for which it was used.

90. Plaintiff, her physicians and healthcare providers reasonably relied on the skill and judgment of the Defendant as to Mirena's fitness for its intended use, and accordingly their implied warranty, in using Mirena.

91. Plaintiff relied on the representations made by the Defendant through the Mirena labels and through advertising and marketing that Mirena was a safe and effective product.

92. Defendant's marketing practices through the Simples Styles program, social media, internet searches and print warranted that Mirena was safe or fit for its intended use.

93. The Defendant breached their implied warranties, since the Mirena was dangerous, not of merchantable quality, defective and unfit for the ordinary purpose for which it was used.

94. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

95. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**FOURTH CAUSE OF ACTION:**

**BREACH OF EXPRESS WARRANTY**

96. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

97. The aforementioned designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena were expressly warranted to be safe by Defendant for Plaintiff and members of the public generally. At the time of the making of these express warranties, Defendant had knowledge of the foreseeable purposes for which Mirena was to be used and Defendant warranted Mirena to be in all respects safe, effective and proper for such purposes.

98. Mirena does not conform to these express warranties and representations because Mirena is not safe or effective and may produce serious side effects.

99. Plaintiff relied on the representations made by the Defendant through the Mirena labels and through advertising and marketing that Mirena was a safe and effective product.

100. Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendant for the use of Mirena in recommending, prescribing, and/or implanting Mirena.

101. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

102. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**REQUEST FOR PUNITIVE DAMAGES**

103. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege as follows:

104. At all times relevant herein, Defendant:

a. knew that Mirena was dangerous and ineffective and was inherently more dangerous than alternative methods of birth control;

b. concealed the dangers and health risks from Plaintiff, physicians, pharmacists, other medical providers, the FDA, and the public at large;

c. continued to aggressively market Mirena in print, through social media and on the internet to consumers, including Plaintiff, without disclosing and/or understating the serious side effects;

d. made misrepresentations to Plaintiff, her physicians, pharmacists, hospitals and medical providers and the public in general as previously stated herein as to the safety and efficacy of Mirena; and

e. with full knowledge of the health risks associated with Mirena and without adequate warnings of the same, continued to manufacture, design, formulate, test,

package, label, produce, create, make, construct, assemble, market, advertise, distribute and sell Mirena for routine use.

105. Defendant, by and through officers, directors, managing agents, authorized sales representatives, employees and/or other agents who engaged in malicious, fraudulent and oppressive conduct towards Plaintiff and the public, acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the general public.

106. The Defendant's intentional and/or reckless failure to disclose information deprived Plaintiff of necessary information to enable her to weigh the true risks of using Mirena against the benefits.

107. As a result of the Defendant's acts and omissions, the Plaintiff suffered from infections, a cyst and abdominal pain, and has endured substantial mental and physical pain and suffering. Plaintiff is at an increased risk for serious complications in the future including infections, cysts, and abdominal pain.

108. Because of the Plaintiff's acts and omissions, the Plaintiff required and may continue to require health care services and incurred medical, health and incidental expenses.

109. The conduct of the Defendant was done with knowing, conscious and deliberate disregard for the rights and safety of consumers, including the Plaintiff. Plaintiff is entitled to punitive damages in an amount appropriate to punish the Defendant and deter them such conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## **PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, cost of suit, attorney's fees, and all other such relief as the Court deems appropriate pursuant to common law and statutory law.

Dated this October 10, 2013

AUDET & PARTNERS, LLP

/s/ Dana M. Isaac

William M. Audet (CA State Bar #117456)
waudet@audetlaw.com
Mark Burton (CA State Bar #178400)
mburton@audetlaw.com
Dana M. Isaac (CA State Bar #278848)
disaac@audetlaw.com
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.982.1776
Facsimile: 415.576.1776
*Attorneys for Plaintiff*