William M. Audet (SBN: 117456)
waudet@audetlaw.com
Mark E. Burton, Jr. (SBN: 178400)
mburton@audetlaw.com
Jill T. Lin (SBN: 284962)
jlin@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California  94105
Telephone:     415-568-2555
Facsimile:     415-568-2556

*Attorneys for Plaintiff Nicole Baker*

Alicia J. Donahue (SBN:  117412)
adonahue@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California  94104-4505
Telephone:     415-544-1900
Facsimile:     415-391-0281

*Attorneys for Defendant
Bayer HealthCare Pharmaceuticals Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE BAKER,<br><br>             Plaintiff,<br><br>      v.<br><br>BAYER HEALTHCARE PHARMACEUTICALS INC.,<br><br>             Defendant. | Case No. 3:13-cv-00490-TEH KAW<br><br>**PARTIES' JOINT DISCOVERY LETTER**<br><br>Complaint filed:  October 10, 2013 |

Counsel for both parties met and conferred telephonically regarding the discovery dispute set forth in this letter to resolve these matters informally.  Being unable to resolve this matter after such attempts, the parties jointly submit this letter and request this court's assistance.

AUDET & PARTNERS, LLP

Dated:  June 11, 2014                By:    */s Jill Lin*
                                            JILL T. LIN
                                            Attorneys for Plaintiff NICOLE BAKER

SHOOK, HARDY & BACON, L.L.P.

Dated:  June 11, 2014                By:    */s Alicia Donahue*
                                            ALICIA J. DONAHUE
                                            Attorneys for Defendant
                                            BAYER HEALTHCARE
                                            PHARMACEUTICALS, INC.

## I. THE UNRESOLVED DISCOVERY DISPUTES

The parties have reached an impasse over what discovery is relevant to this litigation. Plaintiff seeks (1) all sales call notes made by Defendant Bayer HealthCare Pharmaceuticals, Inc.'s ("Bayer" or "Defendant") sales representatives relating to Mirena, unrestricted as to time, place, or scope and (2) records of all reported adverse event reports related to Mirena also unrestricted as to time, place, or scope. Plaintiff contends that all sales call notes are responsive to Plaintiff's Request for Production ("RFP") request no. 8, which seeks documents detailing the strategies and tactics Bayer employed to influence physicians and other health care providers to increase the number of Mirena prescriptions, and all adverse drug event reports ("AERs") are responsive to Plaintiff's request no.18, which seeks all reports and AERs relating to the effectiveness and safety of Mirena in the United States and at Bayer's overseas divisions. Plaintiff contends that she is entitled to all sales call notes related to Mirena, not just those made to Plaintiff's healthcare provider, and AERs of all injuries, not just those sustained by Plaintiff, related to Mirena.  All risks are relevant in a failure to warn case. Sales call notes and AERs contain relevant information that Plaintiff will use at trial.

Bayer has produced sales call notes regarding Plaintiff's healthcare provider, Dr. Georgia Steiman, and adverse event reports ("AERs") related to Plaintiff's alleged injuries, as requested in RFPs No. 32 and 34. As part of its initial disclosures, Bayer produced the Mirena Investigational New Drug and New Drug Application ("IND/NDA") files.  Among other things, these files include Bayer's reports on adverse events associated with the use of Mirena, without limitation to the specific nature of the alleged injury or event. Bayer contends that it has fully complied with RFPs No. 32 and 34 and requests for "all sales call notes" and "all adverse event reports" that are unrestricted as to time, place or scope are overly broad, unduly burdensome and fail the proportionality test of Rule 26.  Indeed, in her actual discovery requests, Plaintiff limited her RFPs to call notes regarding her provider and AERs regarding her alleged injuries. Defendant contends that Plaintiff is improperly seeking to expand her requests through motion practice. Further, Bayer contends that it has already produced the AER data as part of the IND/NDA production and the call notes relevant to this action.  Any additional production would be unduly burdensome.

The parties respectfully request the Court's assistance in resolving this discovery dispute.

II. **PLAINTIFF'S POSITION REGARDING THE DISCOVERY**

Plaintiff seeks information (1) related to all adverse event reports for Mirena to support her claims and (2) all sales call notes to support her claims that Defendant over-promoted Mirena, minimized any risks related to Mirena, and failed to report complaints and events regarding Mirena that should have been reported. Defendant objects to providing adverse event reports of injuries other than those suffered by Plaintiff and sales call notes for health care providers other than Plaintiff's healthcare provider, contending that the documents are not relevant to Plaintiff's claims and producing such documents would be extremely burdensome. Plaintiff is entitled to discovery under California law and Defendant has failed to describe any burden in producing these documents.

A. **California and Federal law support discovery of all risks associated with Mirena.**

California law mandates the disclosure of all risks associated with Mirena to obtain Plaintiff's informed consent to implantation of the device. California authority holds that in the context of failure to warn, causation is measured not with respect to the injury suffered, but with respect to plaintiff's decision making process. *Carlin v. Superior Court,* 13 Cal.4th 1104, 1113 (1996). ["When, in a particular case, the risk qualitatively (e.g. of death or major disability) as well as quantitatively, on balance with the end sought to be achieved, is such as to call for a true choice judgment, medical or personal, the warning must be given…"]; *Warren v. Schecter*, 57 Cal.App.4th 1189, 1204 (1994). ["[Plaintiff] is entitled to recover not only for the undisclosed complications but also for the disclosed complications, because she would not have consented to any surgery had the true risk been disclosed, and therefore would not have suffered those complications either."]

All reported adverse events, not just those related to Plaintiff's injuries, are pertinent to Plaintiff's claims and to demonstrating that defendant had notice that Mirena had a penchant for particular risks. *See e.g. Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986)(finding that trial court improperly excluded evidence of all accidents except those involving only two components involved in plaintiff's case, where the disputed danger was a result of all multi-piece parts and not just parts at issue in plaintiff's case). Evidence of similar accidents and injuries is admissible to prove a product's capacity for harm and the defendant's knowledge of these harmful tendencies. *See e.g. Atlantic Coast Line R. Co. v. Hadlock*, 180 F.2d 105 (5th Cir.1950), *see*

1  *also, e.g., Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000) (court found no
2  error in admitting 92 complaints submitted to the manufacturer regarding breast implant ruptures
3  where only 13 implants ruptured by the exact mechanism in which the plaintiff's had).

4        Plaintiff alleges that she chose Mirena because it was promoted as a safe and effective
5  method of birth control. Plaintiff further alleges that she would not have used Mirena had she
6  received adequate warnings disclosing these risks and that any warnings that were given were
7  significantly diluted via Defendant's over-promotion of Mirena. *See Stevens v. Parke, Davis & Co.*
8  (1973) 9 Cal. 3d 51, 53-54.  All adverse event reports, including those not related to Plaintiff's
9  injuries and any risks discovered by other Bayer affiliates, shed light on the adequacy of disclosures
10 given to Plaintiff and whether she was fully apprised of all risks associated with Mirena. By a parity
11 of reasoning, all sales calls notes from other health care providers that inserted or prescribed Mirena
12 afford relevant evidence that Defendant became aware of particular risks, rates of those risks, and
13 concerns reported by health care providers. The documents are essential for Plaintiff to establish
14 causation in this case and support her claims.

15       Plaintiff also alleges that Bayer misled the healthcare profession, including Plaintiff's
16 prescribing healthcare provider, about the risks associated with Mirena by concealing knowledge of
17 risks associated with product and negligently underreporting, underestimating, and downplaying the
18 serious dangers of Mirena from physicians, hospitals, and the public. The production thus far,
19 excluding the spreadsheet with adverse events related to Plaintiff's injuries, provides compilations
20 and summaries of AERs. Without other evidence of AERs, Plaintiff has no way to determine
21 whether Defendant underreported or underestimated the frequency or number of adverse events in its
22 reports. Bayer's attempts to influence healthcare providers and professionals through calls from sales
23 representatives speaking to the safety or efficacy of Mirena is relevant to Plaintiff's claim that Bayer
24 failed to warn of known risks, was aware of these dangerous side effects, and attempted to suppress
25 this data through its materials.

26       Bayer's production thus far indicates that marketing strategies included a highly specialized
27 salesforce targeted towards maximizing sales through contacting physicians, nurses, pharmacists,
28 and office and staff managers. The sales calls were not made in isolation only to Plaintiff's

3

1  prescribing physician, but in furtherance of Bayer's massive marketing campaign. All sales call
2  notes provide evidence of Bayer's deliberate efforts to influence the prescribing routines of
3  healthcare providers and professionals, including downplaying risks after prescribing physicians
4  express any concerns. The sales call notes provide documentation of over-promotion and evidence
5  Defendant's failure to translate these complaints into an adverse event report or disclose these risks
6  to potential patients. Plaintiff is entitled to this withheld discovery to support her claims.

7  Defendant's argument that Plaintiff has not limited her requests in time is irrelevant because
8  even in the course of meet and confer efforts Defendant contends that, regardless of time frame,
9  Plaintiff is not entitled to AERs or sales call notes if not related to Plaintiff's sustained injuries or to
10 her healthcare provider. The underlying issue in dispute is the requested discovery's relevance to
11 Plaintiff's claims, and Plaintiff respectfully seeks the Court's assistance.

12 **B. Defendant's own actions contradict their argument that production is burdensome.**

13 Defendant has indicated that it has three databases for its sales call notes: Insight, Impact,
14 and Veeva. Each database contains basically the same information. The discovery in dispute is
15 within Defendant's possession and has, in part, already been produced in the ongoing multidistrict
16 litigation case caption *In re: Mirena IUD Products Liability Litigation,* 13-MD-2434(CS) in the
17 United States District Court for the Southern District of New York ("Mirena MDL"). In the ongoing
18 Mirena MDL, Defendant goes through each sales and adverse event database to respond to each
19 Plaintiff Fact Sheet (PFS). Thus, in order to respond to each PFS, Defendant is reviewing the
20 applicable database and providing the relevant sales call notes and adverse events related to a
21 specific plaintiff and healthcare provider. Here, Defendant refuses to produce the sales call notes it
22 has already produced to other plaintiffs, much less the entire database.

23 In this instant action, Plaintiff Baker is not requesting specific sales call notes or adverse
24 events. Plaintiff seeks the entire database. During meet and confer efforts, Defendant indicated that
25 producing entire databases is not burdensome. The only burden articulated by Defendant during the
26 call related to Defendant's desire to review the documents contained in the databases and redact the
27 very information that Plaintiff seeks and maintains is relevant to her claims, i.e. sales representative
28 discussions regarding adverse events. The sales call notes with healthcare providers do not identify

4

1  the specific patient by name but rather discuss complications and adverse events raised by the
2  healthcare provider. This generic discussion does not violate patient privacy or necessitate redaction.
3      Defendant is already producing these documents in the ongoing Mirena MDL, after having
4  opportunity to review and redact the documents. Plaintiff's proposed resolution does not require
5  Defendant to do more than what Defendant is required and already doing in the Mirena MDL.
6  Plaintiff is entitled to this information, and the only existing burden is Defendant's self-prescribed
7  onus to review and redact the very information that Plaintiff seeks. Given that the information is
8  already being produced in the ongoing Mirena MDL and any generic discussion of healthcare
9  provider concerns does not warrant redaction, Defendant's argument as to the burden of producing
10 this discovery lacks merit. The Court should order that Defendant produce the databases for all sales
11 call notes and all reported adverse events related to Mirena without redaction.

12 ### III. DEFENDANT'S POSITION REGARDING PLAINTIFF'S REQUESTS

13     Defendant responded to Plaintiff's Requests for Production ("RFPs") by providing a full
14 production of all requests relevant to the instant application. Plaintiff asked for "all call notes,
15 written impressions or other documents . . . relating to Community Physicians for Women [her
16 healthcare provider]," so Defendant produced all such call notes to Plaintiff's prescribing physician
17 at Community Physicians for Women. Plaintiff also asked for "all documents related to Bayer's
18 Medical Device Adverse Event Reports of Mirena causing i) cysts, (ii) infections and/or (iii)
19 abdominal pain," so in addition to Bayer's entire IND/NDA file for Mirena, Defendant produced a
20 text-searchable spreadsheet containing information on AERs involving alleged similar injuries.

21     Plaintiff does not dispute that Defendant's production is adequate with respect to these
22 specific requests. Instead, she seeks to drastically broaden the scope of her RFPs to seek documents
23 that are (1) immaterial to Plaintiff's causes of action, and (2) overly burdensome and disproportional
24 to her claims. This premature application as to discovery that has never been requested via formal
25 discovery methods violates established discovery rules and practice and should be denied.

26     Plaintiff incorrectly assumes that Bayer outside counsel simply has access to the numerous
27 sales call and adverse event databases requested by Plaintiff, and that these databases are reviewed
28 and produced by Bayer's outside counsel in the Mirena MDL. In fact, in two large consolidated

1  proceedings, both Judge Seibel in the Southern District of New York and Judge Martinotti in New
2  Jersey have entered orders expressly limiting the scope of both adverse event forms to the individual
3  plaintiff and the production of sales call notes only to a specific plaintiff's Mirena prescribing and/or
4  inserting health care provider and no one else. Both Judge Seibel and Judge Martinotti further limit
5  the production of sales call notes in time, so that call notes are only required through the date a
6  plaintiff's Mirena was removed. Even though limited in both time and scope, the production of this
7  information still requires significant resources both at Bayer and at Bayer's outside counsel.

8       Significant effort and expense is necessary to produce the materials Plaintiff is requesting
9  here. Production of the requested materials requires two separate teams of outside counsel to put
10 together information requests. Then, working with company counsel and information technology
11 personnel, multiple databases are reviewed for potentially responsive materials. Some of these
12 databases are legacy systems that are no longer used in the regular course of business in part due to
13 accessibility issues. After material is exported from these databases, it must be reviewed by outside
14 counsel and compared with the information related to a specific plaintiff. Documents must be
15 reviewed by outside counsel to ensure the information received is accurate and outside counsel must
16 also take great care to not provide HIPPA or other protected information unrelated to the plaintiff.

17      Put simply, Plaintiff's assertion that Bayer's outside counsel has previously collected the
18 databases at issue is false.

19 **A. Bayer's Productions Fully Responds to Plaintiff's Requests.**

20      Two document requests are at issue here: RFP 32 and RFP 34. RFP 32 states: "Produce all
21 call notes, written impressions or other documents associated with the sale or performance of Mirena
22 relating to <u>Community Physicians for Women</u>." (*See* RFPs, at Ex. 1 (emphasis added).) (RFP 32 is
23 substantially similar in scope to RFP 3.) On March 27, 2014, Bayer fully responded to this request
24 by producing sales call notes for Plaintiff's prescribing physician, Dr. Georgia Steiman, of
25 Community Physicians for Women. (*See* Bayer's Resp. to RFP 32, attached as Ex. 2.) Plaintiff has
26 not explained how Bayer's response to RFP 32 was insufficient.

27      RFP 34 states: "Produce all documents related to Bayer's Medical Device Adverse Event
28 Reports of Mirena <u>causing i) cysts, (ii) infections and/or (iii) abdominal pain</u>." (*See* Ex. 1 (emphasis

added).)  On February 11, 2014, Bayer produced the IND/NDA files to Plaintiffs as part of its initial disclosures.  These files include AERs associated with the use of Mirena, without limitation to the specific nature of the alleged injury or event.  Furthermore, in response to Plaintiff's discovery requests, on March 27, 2014, Bayer supplemented its initial production with:  (1) Plaintiff's Medwatch Report, which is a record of her AER, and (2) a text-searchable spreadsheet containing information on AERs involving alleged injuries similar to Plaintiff's alleged injuries in this case.  Plaintiff therefore has a text searchable Excel spreadsheet of AER data for reference.  (*See* Bayer's Resp. to RFP 34, attached as Ex. 2.)  These productions fully satisfy Bayer's RFP 34 obligation.[1]

### B. Plaintiff's Informal Request Exceeds the Plain Language of Her Discovery Request.

It is axiomatic that motion practice may not be used to expand the scope of document requests.  *See Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2518948, at *3 (E.D. Cal. June 23, 2011) ("Defendant cannot expand the scope of its requests on a motion to compel"); *Krause v. Nevada Mut. Ins. Co.*, 2014 WL 117572, at *4 (D. Nev. Jan. 10, 2014) (denying attempt to expand scope of RFPs beyond original request).  But that is precisely what Plaintiff asks this Court to do.  Despite never serving a Rule 34 request seeking *every* sales call note for Mirena, or *every* Adverse Event Report, Plaintiff asks this Court to order production of those documents.  This post-hoc attempt to expand Plaintiff's original RFPs should be denied.

### C. Plaintiff Seeks Documents that Are Irrelevant, Duplicative, and Unduly Burdensome.

Plaintiff's improper request should also be denied because the documents sought are irrelevant and/or duplicative, and the burden is disproportional to Plaintiff's claims.

Plaintiff may only obtain discovery relevant to her "claim or defense."  FED. R. CIV. P. 26(b)(1).  Rule 26(b)(1) is meant to avoid discovery that goes beyond the parties' claims or defenses and to avoid fishing expeditions that increase litigation costs.  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006); *see also Bryant v. Mattel, Inc.*, No. No. C 04-09049 SGL (RNBx), 2007 WL 5432959, at *4 (C.D. Cal. Apr. 19, 2007).  Thus, under Rule 26(b)(1), Plaintiff may not use discovery to develop new claims that fall outside the scope of her pleadings.  *Elvig v.*

---

[1] Even if Plaintiff did have a valid request for all AERs, it would be overbroad, and in any event, would be satisfied by the IND/NDA files produced with Bayer's initial disclosures.

7

*Calvin Presbyterian Church*, 375 F.3d 951, 968 (9th Cir. 2004) (explaining that discovery must relate directly to a claim or defense). Even if the discovery sought is "of marginal relevance," it should not be allowed if the burden of discovery outweighs any potential benefit to the opposing party. *See Waggener v.UNUM Life Ins. Co. of America*, 238 F. Supp. 2d 1179, 1185 (S.D. Cal. 2002). Discovery must "also be proportional to the issues and needs of the case." *Kaiser v. BMW of North Am., LLC*, No. C–12–01311 DMR, 2013 WL 1856578, at *3 (N.D. Cal. May 2, 2013).

i. **Plaintiff's Demand for Additional AERs Should Be Denied Because Bayer Already Produced AER Data and Any Additional Production Would Be Unduly Burdensome.**

Plaintiff's request for "all AERs" should be denied because it seeks duplicative documents. The IND/NDA files were provided to Plaintiff in Bayer's initial production. These files contain AER data <u>without limitation to the injury</u>. Plaintiff has not explained how this production is insufficient and fails to even mention it. Further production is cumulative and unduly burdensome.

ii. **Call Notes Other than Those For Plaintiff's Prescribing Physician Are Irrelevant**

Plaintiff has not satisfied her burden of relevancy with regard to call notes involving physicians other than her own.

First, none of Plaintiff's cases support the proposition that in a pharmaceutical product liability action, Plaintiff can maintain a "failure to warn" claim with respect to a failure to warn of alleged harms that she never suffered. *See, e.g., Georges v. Novartis Pharm. Corp.*, NO. CV 06-05207 SJO VBKX, 2012 WL 9083365, at *5 (C.D. Cal. Nov. 2, 2012) ("Plaintiff must demonstrate that Defendant's failure to properly warn was a 'substantial factor' in bringing about Plaintiff's injuries.") Yet that is the exact theory upon which Plaintiff bases her newly-broadened discovery requests. Her request for documents that "shed light on the adequacy of disclosures given to Plaintiff and whether she was fully apprised of all risks associated with Mirena," misrepresents the relevant liability questions in this case, and is an improper basis for even a formal document request.

Second, California follows the learned intermediary doctrine in cases involving prescription drugs. *See Carlin v. Superior Court*, 920 P.2d 1347, 1354 (Cal. 1996). Under this doctrine, "the duty to warn runs *to the physician,* not to the patient." *Id.* (emphasis in original). Thus, a plaintiff must prove that a warning to the prescribing physician was absent or inadequate and "that the

8

1  inadequacy or absence of the warning caused the plaintiff's injury." *Motus v. Pfizer Inc.*, 196 F.
2  Supp. 2d 984, 990-91 (C.D. Cal. 2001), *aff'd* 358 F.3d 659 (9th Cir. 2004).  The causation analysis
3  requires a plaintiff to prove that the prescribing physician, not the patient, "would have acted
4  differently had" the defendant "provided an adequate warning about the alleged risk." *Id.* at 999.

5        Call notes regarding Bayer sales representatives and physicians <u>other than</u> Plaintiff's
6  prescriber are irrelevant to the causation analysis.  Plaintiff cites *Carlin* for the proposition that
7  "causation is measured not with respect to the injury suffered, but with respect to plaintiff's decision
8  making process," but *Carlin* does not support this.  Nor does *Carlin* excuse a plaintiff from proving
9  specific causation—*i.e., that her doctor would have acted differently had an adequate warning been
10  given*. Under this test, neither the Plaintiff's nor the public's awareness of Mirena's risk is relevant.

11        In similar situations, courts refused to authorize broad discovery of call notes.  For instance,
12  in *In re Fosamax Products Liability Litigation*, MDL No. 1789, No. 1:06-md-1789 (JFK), 2008 WL
13  2345877, at *11 (S.D.N.Y. June 5, 2008), the Plaintiffs filed a motion to compel the production of
14  call notes and refused to limit the request as to time.  The Court denied this relief and instead ordered
15  production only of call notes of "sales representatives who called on the prescribing physicians of
16  plaintiff in the early trial pool cases" between a specified, relevant date range.  As in *Fosamax*, the
17  Court should deny Plaintiff's informal request for call notes unrelated to Plaintiff's claims.

18        **iii. Production of All Call Notes is Unduly Burdensome, Outweighing Potential Benefit**.

19        Plaintiff incorrectly assumes Bayer would bear no burden if forced to produce all call notes.
20  This is wrong, as discussed above, Bayer has not produced Mirena call notes for every prescribing
21  physician during the Mirena litigation.  Its productions—including those in the MDL and the NJ
22  consolidated ligation—have instead been limited to the plaintiffs' specific prescribing physicians.

23        Furthermore, Bayer has never "indicated that producing entire databases is not burdensome."
24  In reality, Bayer has employed hundreds of sales representatives who have called on many thousands
25  of physicians during the 14-year existence of Mirena.  Bayer would have to spend hundreds of hours
26  to review every single call note before production and, potentially, redact sensitive or confidential
27  data.  Redaction is necessary to meet federal and state privacy laws.  This process would impose a
28  massive cost on Bayer to provide Plaintiff with, *e.g.*, call notes from a completely irrelevant doctor

in Maine with no connection to Plaintiff's individual lawsuit — especially when Plaintiff's informal request is not limited in scope to the dates of her lawsuit. Bayer should not be forced to undergo this huge burden just so that Plaintiff may engage in a fishing expedition. *See, e.g.*, *Bernstein*, 447 F. Supp. 2d at 1102 (Rule 26(b) precludes discovery "that impose[s] unjustifiable expenses").

### iv. Plaintiff's Demand for All Call Notes and Additional AER Data Is Not Proportional

Plaintiff asks that Bayer engage in expensive and burdensome discovery that far exceeds that required even in the consolidated MDL and New Jersey litigations, which together include approximately 1500 plaintiffs. In those consolidated litigations, Bayer did not, and was not required to, produce call notes for every physician who ever prescribed Mirena. Nor did Bayer produce AER data other than, as here, the data contained in the IND/NDA files, the AERs involving injuries similar to those alleged by the particular plaintiffs, and each individual plaintiff's Medwatch reports. That Plaintiff seeks more documents here than were produced in the consolidated actions demonstrates that her demand is not proportional to her claims.

In *Kaiser v. BMW of North Am., LLC*, for instance, the plaintiff sought "extensive discovery regarding potentially hundreds of consumer transactions," but the court did not allow this discovery because it was not proportional. 2013 WL 1856578 at *3 ("[T]his lawsuit involves a single plaintiff rather than a putative class . . . Plaintiff's requests may well be appropriate for a class case, but not for this single transaction lawsuit."). Here, the discovery this single Plaintiff seeks is even more disproportionate than in *Kaiser* because it *exceeds* the discovery required in two different consolidated Mirena litigations.[2] The discovery request should be denied.

|  | AUDET & PARTNERS, LLP |
|---|---|
| Dated: June 11, 2014 | By: */s Jill Lin*<br>JILL T. LIN<br>Attorneys for Plaintiff NICOLE BAKER |
|  | SHOOK, HARDY & BACON L.L.P. |
| Dated: June 11, 2014 | By: */s Alicia Donahue*<br>ALICIA J. DONAHUE<br>Attorneys for Defendant Bayer |

---

[2] Moreover, Plaintiff provides no date range in her RFPs, and, *e.g.*, 2014 data is not relevant to Plaintiff's alleged use of Mirena from 2010 until October 2011. (*See* 2d Am. Compl. at ¶¶ 29, 33.)