William M. Audet (SBN: 117456)
waudet@audetlaw.com
Mark E. Burton, Jr. (SBN: 178400)
mburton@audetlaw.com
Jill T. Lin (SBN: 284962)
jlin@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California  94105
Telephone:     415-568-2555
Facsimile:      415-568-2556

*Attorneys for Plaintiff Nicole Baker*

Alicia J. Donahue (SBN:  117412)
adonahue@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California  94104-4505
Telephone:     415-544-1900
Facsimile:      415-391-0281

*Attorneys for Defendant*
*Bayer HealthCare Pharmaceuticals Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE BAKER,<br><br>                    Plaintiff,<br><br>          v.<br><br>BAYER HEALTHCARE PHARMACEUTICALS INC.,<br><br>                    Defendant. | Case No. 3:13-cv-00490-TEH KAW<br><br>**PARTIES' JOINT DISCOVERY LETTER**<br><br>Complaint filed:  October 10, 2013 |

1    After ongoing and continued efforts to meet and confer, lead trial counsel for both parties

2    met and conferred in person in accordance with this Court's Standing Order at Plaintiff's counsel's

3    office regarding their discovery disputes to resolve these matters informally. During this meeting,

4    the Parties resolved their dispute concerning Defendant's production of adverse event reports but

5    were unable to come to an agreement concerning Defendant's production of sales call notes.

6    Plaintiff is entitled to all sales call notes without any geographical or time limitations. Defendant

7    contends that Plaintiff is entitled to sales call notes applicable to Plaintiff's health care provider who

8    prescribed and/or inserted Mirena. Defendant has already produced those sales call notes to Plaintiff.

9    Being unable to resolve this matter after attempts to meet and confer telephonically and in person,

10   the parties jointly submit this letter that conforms to the Court's General Standing Order and

11   respectfully request this Court's assistance.

12   Given the sheer scope and implications of the order Plaintiff seeks, and its deviation from

13   and impact on over 1500 Mirena cases pending in the Multi District Litigation in New York, the

14   consolidated proceedings in New Jersey, and other federal and state courts in California and

15   throughout the rest of the country, Bayer respectfully requests the opportunity to present oral

16   argument on this matter and to provide additional materials for in camera review supporting Bayer's

17   position that sales call notes may contain protected health information and that Plaintiff's request

18   would necessitate the careful review of millions of irrelevant documents so as to comply with federal

19   and state privacy requirements. Given the General Standing Order's restriction on attaching exhibits,

20   Bayer also requests the opportunity to submit the transcript from the August 14, 2013 MDL hearing

21   before Judge Seibel in the Southern District of New York, and resulting order, demonstrating the

22   limitations the MDL court identified on sales call notes from even plaintiffs' healthcare providers.

23                                                   AUDET & PARTNERS, LLP

24   Dated:  September 4, 2014              By:  */s/ Jill T. Lin*_____
25                                                        JILL T. LIN
                                                   *Attorneys For Plaintiff Nicole Baker*

26                                                   SHOOK, HARDY & BACON, L.L.P.

27   Dated:  September 4, 2014              By:  */s/ Alicia J. Donahue*_____
28                                                        ALICIA J. DONAHUE
                                                   *Attorneys for Defendant*
                                                   *Bayer Healthcare Pharmaceuticals, Inc.*

## THE UNRESOLVED DISCOVERY DISPUTE

Plaintiff Nicole Baker ("Plaintiff") seeks information related to all notes maintained in Defendant's databases and made by Defendant Bayer Healthcare Pharmaceuticals Corporation ("Bayer")'s sales representatives when contacting physicians and healthcare providers. Plaintiff seeks the discovery to support her claims that Defendant overpromoted Mirena, minimized any risks related to Mirena, and failed to report complaints and events regarding Mirena that should have been reported. Bayer objects to providing sales call notes for health care providers other than Plaintiff's healthcare provider. Bayer asserts that there is no valid request for all sales call notes, that sales call notes for the tens of thousands of healthcare providers throughout the United States who have no connection to Plaintiff are irrelevant to the claims and defenses in this case, and that the purported request for all sales notes for every visit to tens of thousands of prescribers throughout the United States, encompassing millions of pages of documents, is unduly burdensome and is not proportional to this single-plaintiff lawsuit.

Because the parties have reached an impasse on whether Plaintiff is entitled to the entirety of Defendant's databases of sales call notes, the parties respectfully seek this Court's assistance in resolving this discovery dispute.

PARTIES' JOINT DISCOVERY LETTER
CASE NO. 3:13-cv-00490-TEH KAW

293173 V1

1   **I.      PLAINTIFF'S SUBSTANTIVE POSITION**

2          Sales call notes will assist Plaintiff in determining if overpromotion of Mirena potentially

3   affected a physician's decision to prescribe the drug. Although Defendant contends that the evidence

4   should be limited to the prescribing physician, overpromotion by the manufacturer and its sales force

5   can result in the dilution or nullification of any warnings, thereby rendering them inadequate. As a

6   result, evidence relating to global sales and marketing promotions will provide essential proof on

7   Plaintiff's causes of action based upon failure to warn.

8    **A.  The law promotes discovery of Bayer's sales call notes database**

9          Under the broad purview of Federal Rules, the court may order discovery of any non-

10  privileged matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1).

11  Information related to all notes maintained in Defendant's databases and made by Defendant Bayer's

12  sales representatives when contacting physicians and healthcare providers is directly responsive to

13  Plaintiff's request and relevant to Plaintiff's claims and defenses in this action.

14         A manufacturer has the duty to give correct, complete, and fully descriptive warnings of all

15  potential dangers in its prescription drugs that were known or should have been known to exist and

16  convey updated information as to all of the drugs' known side effects. *Carlin v. The Super. Court of*

17  *Sutter County*, 13 Cal.4th 1104, 112-13 (1996). The warning must be clear so that it is "direct,

18  unequivocal and sufficiently forceful to convey the risk." *Martin v. Hacker*, 83 N.Y. 2d 1, 11 (1993).

19  Merely mentioning a possible injury or adverse effect is not necessarily adequate. *Stahl v. Novartis*

20  *Pharm. Corp.*, 283 F.3d 254, 267 (5th Cir.2002). Notes from conversations between Bayer's sales

21  representatives and healthcare providers provide evidence as to what warnings, if any, Bayer

22  provided to healthcare providers and support Plaintiff's theory as to inadequate warning and

23  overpromotion.

24         Plaintiff's Request for Production of Documents Request Number 8 compels documents

25  detailing the strategies and tactics Bayer employed to influence physicians and other healthcare

26  providers to increase the number of Mirena prescriptions. In addition to asserting liability under the

27  theory of failure to warn, Plaintiff alleges that any warnings that were given were significantly

28  diluted by Defendant's aggressive marketing and overpromotion of Mirena. Defendant's sales

1    efforts, including advertising, marketing, and promotion, are evidence of a vigorous sales campaign

2    to induce the entire medical profession in general to fail to heed any written warnings. The sales call

3    notes are a reflection of this campaign and responsive to Plaintiff's requests.

4         Defendant produced a spreadsheet of sales call notes for Plaintiff's healthcare provider, bates

5    labeled MIR_BAKER_6. In addition to the type of contact, name of the activity, and date of contact,

6    there is a column where a Bayer sales representative can provide a narrative and any comments

7    regarding the contact. Although significantly redacted, the comments section evidences Bayer's

8    sales techniques and strategies. In accordance with the Honorable Judge Kandis Westmore's

9    standing order, MIR_BAKER_6 is not attached to this brief. The parties respectfully request an

10   opportunity to produce referenced exhibits during any oral argument on this matter. The notes also

11   provide evidence of whether warnings, if any, were given. Discovery as to other healthcare providers

12   are essential to evaluate Bayer's pervasive campaign and fall within the Federal Rules' broad scope

13   of discovery.

14   **B.  Discovery should not be limited to plaintiff's healthcare provider**

15        Defendant's principal argument for limiting discovery to only Plaintiff's healthcare provider

16   hinges on the learned intermediary doctrine, which would excuse a drug manufacturer from warning

17   each ultimate consumer if the manufacturer accurately warns the prescribing physician of the

18   product's dangers. *Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51, 65 (1973). Defendant suggests the

19   only relevant evidence pertains to warnings the treating physician received. However, courts have

20   recognized overpromotion as an exception to the learned intermediary doctrine. *Motus v. Pfizer, Inc.*,

21   196 F. Supp. 2d 984, 998 (C.D. Cal. 2001) *aff'd sub nom. Motus v. Pfizer Inc. (Roerig Div.)*, 358

22   F.3d 659 (9th Cir. 2004) ("An overpromotion theory is one way that a plaintiff in a failure-to-warn

23   case can overcome the manufacturer's argument either (1) that it provided adequate warnings or (2)

24   that the doctor's decision to prescribe a drug despite his awareness of its dangers was an intervening

25   cause sufficient to vitiate the manufacturer's liability"). Courts have routinely granted discovery into

26   sales practices and marketing as evidence of overpromotion and Plaintiff is permitted to conduct

27   discovery of any overpromotion to support her defense against the learned intermediary doctrine. *See*

28

*e.g. Nobles v. AstraZeneca Pharm.*, 48 Conn. Supp. 134, 136 (Conn. Super. 2003) (exception includes incidences where drug is overpromoted).

Mirena was approved by the FDA for use in the United States in December 2000. Since then, Defendant has heavily marketed Mirena through, *inter alia*, its sales force. The theory of overpromotion supports Plaintiff's discovery into Defendant's marketing practices and any profit motive behind Defendant's conduct. Evidence demonstrating a profit motive is relevant on issues related to overpromotion and, ultimately, the adequacy of warnings. *Love v. Wolf*, 226 Cal. App. 2d 378, 389 (1964) (proof of sales was relevant to show a motive or reason for the alleged over-promotion of the drug); *see also Mahr v. G.D. Searle & Co.*, 72 Ill.App.3d, 540, 574 (1979) (jury entitled to consider marketing efforts in rendering decision on adequacy of warnings and admitting evidence which indicated "an aggressive promotional campaign aimed at increased exposure and prescription"). Courts have permitted evidence that overpromotion through an aggressive sales campaign can affect the entire medical profession in general. *See e.g. Whitely v. Cubberly*, 24 N.C. App. 204, 207-208 (1974) ("even though all warnings required by Federal authorities may have been given, such warnings would be insufficient to exonerate [manufacturer] from all liability if over-promotion through a vigorous sales campaign should induce the medical profession in general, and in this case [plaintiff's physician] in particular, to fail adequately to heed the warnings given").

Defendant's production, MIR_BAKER_6, provides information related to any comments, questions, or concerns related to Mirena. For example, Defendant's production of sales call notes related to Plaintiff's healthcare provider indicates that sales representatives took notes related to "tolerability," answered questions about the size of Mirena, and that Plaintiff's healthcare provider was "over her fear of inserting [Mirena] and starting to do more." *See* Exhibit A. The notes patently show if a physician or healthcare provider expresses any reservations concerning Mirena and potentially documents any warnings or advisements given by Bayer's sales representatives. The information provided by other sales representatives paints a global portrait of whether sales representatives as a whole were providing sufficient information such that the medical field is in a position to fully appreciate the risks when prescribing Mirena.

C. **Defendant's own burden arises out of its own desire to review and redact the information**

Defendant has indicated that it has three databases for its sales call notes: Insight, Impact, and Veeva. Each database contains basically the same information. Plaintiff Baker does not request specific sales call notes, but rather the entire database. During meet and confer, Defendant indicated that producing entire databases is not burdensome. Rather, Defendant creates its own burden through its desire to redact any purportedly privileged, confidential, and sensitive information. Defendant asserts that redaction is necessary to meet federal and state privacy laws, yet production of these notes was not accompanied by a privilege log and, during the meet and confer process, Defendant maintained that information was redacted for information concerning Bayer's other drugs and on the basis of the Health Insurance Portability and Accountability Act ("HIPAA")'s privacy regulations.

The sales call notes with healthcare providers do not identify the specific patient by name, but merely discuss complications and adverse events raised by the healthcare provider. This generic discussion does not violate patient privacy or necessitate redaction. Pursuant to HIPAA privacy regulations, physicians are instructed to disclose the minimum amount of information necessary to make reports and complaints regarding adverse events. 45 C.F.R. 164.502(b). Further in compliance with HIPPA, physicians are not permitted to share protected health information with a pharmaceutical sales representative as part of the physician's experiences with the drug manufacturer's product, unless the physician has obtained valid authorization from the patient to share the information for these purposes. 45 C.F.R. 164.502(a)(1)(iv). In compliance with HIPAA privacy regulations, there should be no privileged or sensitive information in the sales call notes. Additionally, there is no privilege protecting the identity of other prescriptions promoted by Bayer. Defendant's argument that it would be burdensome to go through all the notes before production and redact the notes for privileged information fails.

D. **Defendant's own actions contradict their argument that production is burdensome**

The discovery in dispute is within Defendant's possession and has, in part, already been produced in the ongoing multidistrict litigation case caption *In re: Mirena IUD Products Liability Litigation*, 13-MD-2434(CS) in the United States District Court for the Southern District of New York ("Mirena MDL"). In the ongoing Mirena MDL, Defendant goes through each sales database to

respond to each Plaintiff Fact Sheet (PFS).  In order to respond to each PFS, Defendant is reviewing the applicable database and providing the relevant sales call notes related to a specific plaintiff and healthcare provider. Here, Defendant refuses to produce the sales call notes it has already produced to other plaintiffs after having opportunity to review and redact the documents, much less the entire database.

Plaintiff's proposed resolution does not require Bayer to do more than what it is required and already doing in the Mirena MDL. In fact, Defendant has produced millions of pages in the present action, the majority of which were also produced in the MDL. Defendant refuses to do the same for the sales call notes. The only existing burden is Defendant's self-prescribed onus to review and redact the very information that Plaintiff seeks. Given that the information is already being produced in the ongoing Mirena MDL and any generic discussion of healthcare provider concerns does not warrant redaction, Defendant's argument as to the burden of producing this discovery lacks merit. The Court should order that Defendant produce the databases for all sales call notes, at least in the United States, related to Mirena and without redaction.

In sum, Defendant's actions eliminate their own defense against producing the three sales call databases. Defendant has a burden to show that the information is not reasonably accessible because of undue burden or cost. Fed. R. Civ. P. 26(B). Defendants have failed to make such a showing. Even in the event that the Court would be inclined to find that production of the databases would be burdensome, the Court may nonetheless order the discovery if the requesting party has demonstrated good cause pursuant to Rule 26(b)(2)(C). Plaintiff has demonstrated that the cases are relevant evidence in support of her legal theories and against Defendant's learned intermediary defense. Defendant is the sole holder of this discovery and Plaintiff has no other opportunity to obtain the same discovery by any other means. As such, this Court should order Defendant to produce all sales call notes maintained in Defendant's databases and made by Defendant's sales representatives when contacting physicians and healthcare providers, at least in the United States or as produced in the related and ongoing multidistrict litigation.

II.     **DEFENDANT'S SUBSTANTIVE POSITION**

Assuming Plaintiff even had a valid Request for Production for every single call note for any physician throughout the United States,[1] that request is improper because the discovery sought goes beyond the permissible scope of discovery and is unduly burdensome, and disproportionate to Plaintiff's individual claims. Indeed, Bayer is not required to produce its entire sales call database in the MDL or in the NJ consolidated cases, cases that include well over one-thousand total plaintiffs. In fact, Plaintiff wholly fails to cite to a single pharmaceutical MDL or other litigation in which such an overly broad and unduly burdensome request was granted. Plaintiff's argument mistakenly assumes that Bayer outside counsel simply has access to the millions of nationwide sales call notes and these databases are simply reviewed and produced in the Mirena MDL. That is not the case. In fact, in two large consolidated proceedings, both Judge Seibel in the Southern District of New York and Judge Martinotti in New Jersey have entered orders limiting the production of any sales call notes only to a specific plaintiff's Mirena prescribing and/or inserting health care provider and *no one else*. Both Judge Seibel and Judge Martinotti further limit the production of sales call notes in time, so that call notes are only required through the date a plaintiff's Mirena was removed.

Production of the requested materials requires two separate teams of outside counsel to put together information requests. Then, working with company counsel and IT personnel, multiple databases are reviewed for potentially responsive materials, including databases that do not break out Mirena related calls from non-Mirena ones. Some of these databases, such as Insight and Impact, are legacy systems that are no longer used in the regular course of business in part due to accessibility issues, further slowing any searching. After material is exported from these databases, it must be reviewed by counsel and compared with information related to a specific plaintiff. Documents must be reviewed to ensure the information received is accurate and great care is taken to identify and

---

[1] Plaintiff's Request No. 8 is phrased: "Produce all documents relating to marketing plans, brand strategies, and other such documents detailing the strategies and tactics Bayer employed to influence physicians and other health care providers to increase the number of Mirena prescriptions." (Ex. A.) Bayer did produce marketing plans and brand strategies. Nowhere does RFP No. 8 ask for all sales call notes. *See* Fed. R. Civ. Proc. 34(b)(1)(A) (request "must describe with reasonable particularity each item or category of items to be inspected"). Plaintiff's attempt to reformulate her RFP No. 8 should not be permitted. *See Gerawan Farming, Inc. v. Prima Bella Prod.*, 2011 WL 2518948, at *3 (E.D. Cal. June 23, 2011) (Cannot expand scope of requests on motion to compel").

redact protected information unrelated to the plaintiff. The review process for sales call notes that have been produced to date show that some sales call notes contain HIPAA protected information, thus requiring that *any* sales call note which is produced be carefully reviewed first. The types of HIPAA protected information that has appeared in sales call notes and had to be redacted to date include situations where the healthcare provider discusses her own related medical condition with a sales representative, or where professional courtesy units were requested by a health care provider.

Put simply, Plaintiff's assertion that Bayer's outside counsel has previously collected the databases at issue is false. Bayer's outside counsel has not collected any of the entire sales call databases. Also incorrect is Plaintiff's assertion that production of databases would not be unduly burdensome. Production of sales call notes for a plaintiff and supporting documentation is a collaborative effort where internal and external teams search, export, and review the information.

### A. Plaintiff Seeks Documents that Are Irrelevant and Unduly Burdensome.

Plaintiff must show good cause to obtain documents relevant to the subject matter of the litigation; otherwise, Plaintiff is only entitled to discovery relevant to her "claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) is meant to avoid fishing expeditions that increase litigation costs. *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006). Even if the discovery sought is "of marginal relevance," it should not be allowed if the burden of discovery outweighs any potential benefit to the opposing party. *See Waggener v. UNUM Life Ins.*, 238 F. Supp. 2d 1179, 1185 (S.D. Cal. 2002). Discovery must "also be proportional to the issues and needs of the case." *Kaiser v. BMW*, 2013 WL 1856578, at *3 (N.D. Cal. May 2, 2013).

### i. Call Notes Other than for Plaintiff's Prescribing Physician Are Irrelevant.

Plaintiff's relevance theory ignores California's learned intermediary doctrine. Indeed, none of Plaintiff's cases support the proposition that in a *California* prescription product action, Plaintiff can maintain a "failure to warn" claim based on the knowledge and prescribing decisions of doctors who never saw and treated Plaintiff, and have no connection whatsoever to Plaintiff. *See, e.g., Georges v. Novartis Pharm*, 2012 WL 9083365, at *5 (C.D. Cal. Nov. 2, 2012) ("Plaintiff must demonstrate that Defendant's failure to properly warn was a 'substantial factor' in bringing about

Plaintiff's injuries"). Yet that is Plaintiff's theory, that unrelated discussions with doctors throughout the country with no connection to this case are relevant to assess her prescriber's decisions.

California follows the learned intermediary doctrine in cases involving prescription drugs. *See Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996); *Valentine v. Baxter Healthcare Corp*., 68 Cal. App. 4th 1467, 1483 (1999). In California, under this doctrine, "the duty to warn runs *to the physician,* not to the patient." *Id.* (emphasis in original). And Plaintiff's cases do not suggest otherwise. For example, in *Motus v. Pfizer Inc*., the court recognized that an overpromotion theory relates only to the effect that overpromotion had on the *plaintiff's* physician's prescribing decision:

> The logic of an overpromotion theory is that the manufacturer's aggressive marketing caused a physician to discount a known risk when prescribing a drug to a patient. Because this Court's ruling is based only on the ground that Plaintiff failed to prove that [Plaintiff's prescriber] *Dr. Trostler* would not have prescribed Zoloft if an adequate warning had been provided, not on his awareness of claims that SSRI drugs were linked to increased suicide, there is no need to address whether Pfizer's alleged overpromotion contaminated *Dr. Trotsler's* decision . . . *Dr. Trostler* did not rely on any statements from Pfizer. Under these circumstances, it would appear that Plaintiff could not demonstrate that Pfizer's alleged overpromotion caused *Dr. Trostler* to prescribe Zoloft to Mr. Motus.

196 F. Supp. at 999 (emphasis added). Likewise, the pre-*Carlin* case of *Love v. Wolf* makes clear that overpromotion relates to *plaintiff's* prescribing physician. 226 Cal. App. 2d at 399 ("if such over-prescription by the doctor was not caused by the over-promotion of Parke-Davis then, however negligent such over-promotion may have been, Parke-Davis could not be held liable.")[2] Therefore, in California, the relevant inquiry is subsumed within the learned intermediary doctrine and asks whether overpromotion to *plaintiff's* prescriber affected the prescribing decision.

The other cases Plaintiff relies on are inapposite out-of-state cases:

First, Plaintiff cites to *Nobles v. AstraZeneca*, 48 Conn. Supp. 134, 136 (Conn. 2003), which applied *Connecticut* law. It also does not address sales call notes or suggest that communications with physicians other than plaintiff's are relevant. Beyond that, Judge Hurley vacated the part of the decision plaintiff relies on. 35 Conn. L. Rptr. 496 (Conn. 2003) ("The Court's decision dated August 12, 2003 on AstraZeneca LP's motion for summary judgment is hereby vacated and is of no more force and effect as to AstraZeneca's motion for summary judgment only.").

---

[2] Plaintiff's parenthetical from *Love* has nothing to do with the issue here. It also misleadingly references "proof of sales"—omitting the word "dollars"—thus suggesting that *Love* was discussing sales call notes. *Love* was discussing "proof of dollar sales or profit." 226 Cal. App. 2d at 389.

Next, Plaintiff cites to the 35-year old Illinois decision in *Mahr v. G.D. Searle & Co.*, 72 Ill. App. 3d, 540 (1979). But *Mahr* was applying Texas law. *Id.* at 560. Further, *Mahr* did not address sales call notes or say that communications with physician's other than the plaintiff's are relevant.

Last, Plaintiff relies upon the 40-year old decision of *Whitely v. Cubberly*, 24 N.C. App. 204, 207-208 (1974), which applies North Carolina law and does not address sales call notes. Further, *Whitely* was a summary judgment review case, and treated improper marketing and overpromotion as causes of action. *Id.* at 293 (dissenting opinion). Even then, in *Whitely,* the relevant inquiry was whether *plaintiff's* prescriber's decision was affected by the sales campaign. *Id.* at 207-208.

Therefore, Plaintiff's authorities only highlight that causation requires a plaintiff to prove that *her* prescribing physician "would have acted differently had" the defendant "provided an adequate warning about the alleged risk." *Motus*, 196 F. Supp. at 999. Call notes regarding Bayer sales representatives and physicians other than Plaintiff's are thus irrelevant under California law. The only sales call notes that could arguably have *any* relevance would be sales call notes for *Plaintiff's* healthcare provider, which have already been provided. It is thus not surprising that Plaintiff fails to identify *any* case requiring sales call notes for physicians other than a plaintiff's.

In fact, even with a plaintiff's own prescribers, courts have limited discovery of call notes. For instance, in *In re Fosamax Products Liability Litig.*, 2008 WL 2345877 (S.D.N.Y. June 5, 2008), plaintiffs sought to compel production of call notes and refused to limit the request as to time. The Court denied this and instead ordered production only of call notes of "sales representatives who called on the prescribing physicians of plaintiff" between a specified, relevant date range. *Id.* at *11.

ii.   **Production of All Call Notes is Unduly Burdensome and Disproportionate.**

As discussed above, Bayer has not produced Mirena call notes for every prescribing physician during the Mirena litigation. Its productions—including those in the MDL and the NJ consolidated ligation—have instead been limited to the plaintiffs' specific prescribing physicians.

Further, Bayer has never indicated that producing entire databases is not burdensome. Bayer has employed hundreds of sales representatives who have called on many thousands of physicians during the 14-year existence of Mirena. In addition to the burden of taking Bayer employees away from their jobs to comb through and pull the information from a vast quantity of legacy documents,

9

Bayer would also have to review every single call note before production and, potentially, redact sensitive or confidential data. Redaction is necessary to meet federal and state privacy laws. For example, the review process for sales call notes produced to date show that some sales call notes contain information protected under HIPAA which must be redacted, such as where the healthcare provider discusses her own related medical condition or where a healthcare provider discusses a family member's personal health history, or where professional courtesy units were requested by a provider. Bayer should not be forced to undergo this huge burden of reviewing millions of pages for Plaintiff's fishing expedition. *See, e.g.*, *Bernstein*, 447 F. Supp. 2d at 1102.

Indeed, Plaintiff's request far exceeds what's required even in the *entire* consolidated MDL and New Jersey litigations, which together include more than 1500 plaintiffs. In those consolidated litigations, Bayer did not, and was not required to, produce call notes for every physician who ever prescribed Mirena. That Plaintiff seeks more documents here than were produced in all the consolidated actions combined demonstrates that her demand is not proportional to her claims. *Kaiser*, 2013 WL 1856578 at *3 ("[T]his lawsuit involves a single plaintiff rather than a putative class . . . Plaintiff's requests may well be appropriate for a class case, but not for this single transaction lawsuit."). Here, the discovery this single Plaintiff seeks is even more disproportionate than *Kaiser* because it *exceeds* the discovery required in two consolidated Mirena litigations.[3]

## B. Bayer's Proposed Final Compromise

Since Plaintiff seeks discovery she (incorrectly) believes provided in the MDL, Bayer proposes that Parties utilize the same discovery mechanisms used in the MDL. Specifically, the Plaintiff Fact Sheet/Defense Fact Sheet information exchange model (a model also adopted in other cases pending in California and throughout the country). In that context, Bayer proposes that if Plaintiff provides a substantially complete PFS, Bayer would provide a detailed DFS, which would contain, among other things, extensive information on sales calls to Plaintiff's provider, such as information on the sales representative, including territory covered, date of hire, supervising manager and field sales director, and details of samples and promotional items provided.

---

[3] Moreover, Plaintiff provides no date range in her RFPs, and, *e.g.*, 2014 data for a doctor in Ohio or Florida is not relevant to Plaintiff's alleged use of Mirena from 2010 to 2011. As an example, there are 1,588,507 calls for only the period from 2011, with no simple way to separate Mirena calls.

AUDET & PARTNERS, LLP

Dated:  September 4, 2014                    By:  /s/ Jill T. Lin
                                                  JILL T. LIN
                                                  Attorneys for Plaintiff NICOLE BAKER


SHOOK, HARDY & BACON, L.L.P.

Dated:  September 4, 2014                    By:  /s/ Alicia J. Donahue
                                                  ALICIA J. DONAHUE
                                                  Attorneys for Defendant Bayer

# EXHIBIT A

William M. Audet (CA State Bar #117456)
waudet@audetlaw.com
Mark Burton (CA State Bar #178400)
mburton@audetlaw.com
Dana M. Isaac (CA State Bar #278848)
disaac@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.576.1776

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE BAKER, <br><br> Plaintiff, <br><br> vs. <br><br> BAYER HEALTHCARE PHARMACEUTICALS INC., <br><br> Defendant. | **Case No.: C:13-00490-TEH** <br><br> **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT BAYER HEALTHCARE PHARMACEUTICALS, INC.** |

PROPOUNDING PARTY:   Plaintiff NICOLE BAKER

RESPONDING PARTY:   Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

SET NUMBER:   ONE

  Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests the following documents and tangible things for inspection and copying at the offices

of Audet & Partners, LLP, located at 221 Main Street, Suite 1460, San Francisco, CA 94105 (415) 982-1776 (telephone) within thirty (30) days of service of these requests.

### GENERAL INSTRUCTIONS

1.      Each Request set forth herein refers to documents in the custody, control, and possession of Defendant or known to Defendant, as well as in the custody, control, and possession of or known to Defendant's counsel, representatives, agents, servants, investigators, and consultants, and unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators and consultants.

2.      With respect to any of the requested documents, if any such document is unavailable, because it was lost or destroyed by Defendant or its agents, or for any other reason, after fully identifying the document, state when and where it was destroyed or is otherwise unavailable, the name and address of the person who destroyed it, the name and address of the person(s) who directed, approved, or knew of its destruction, and the name and address of the person(s) who has knowledge of such document.

3.      If there is a claim of privilege with respect to any document requested, please identify every such document in the response, and include in the identification a description of the document, the date of the document, the names of the addresses and addressers, the identity and address of every person to whom a copy was given or communicated, the general subject matter of the document, a statement of the facts constituting the basis for any claim of privilege, and the specific basis on which the privilege is claimed.

4.      If you cannot produce documents for any other reason, respond to the extent possible, stating your reasons for your inability to respond in full.

5.      The singular form of a word should be interpreted as plural, and the plural form of a word should be interpreted as singular, to bring within the scope of this request any information that might otherwise be considered to be beyond their scope.

6.      These Requests shall be deemed continuing, to the full extent required or permitted under the Federal Rules of Civil Procedure, so as to require supplementary production

1 when Defendant obtains access, custody, possession or control of any document not previously

2 produced, which is responsive to any of these Requests.

### DEFINITIONS

4    All terms in this document production request shall have the same meaning as in the

5 Complaint in this action. In addition, the following words and phrases shall the meanings given:

6    7. "YOU," "YOUR" "DEFENDANT" and "BAYER" means Defendant BAYER

7 HEALTHCARE PHARMACEUTICALS, INC., or any person acting on its behalf, including

8 but not limited to, employees, representatives or agents, accountants, attorneys, or consultants.

9    8. "REFER(RING)," "RELATE(D)," "RELATED TO," and "CONCERNING" are used in

10 their broadest and most inclusive sense and mean and include the terms relate to, refer to,

11 constitute, memorialize, summarize, discuss, describe, mention, reflect, contain, concern,

12 embody, identify, evidence, state, deal with, comment on, respond to, set forth, pertain to,

13 analyze, support, contradict, or is logically or factually connected with that subject or thing.

14    9.    "DOCUMENT(S)," and "DOCUMENTATION" means any document, as

15 defined by the federal rules, including all ESI in native format or as otherwise agreed by the

16 undersigned counsel. You are instructed to comply with Rule 34 (b)(2)(E)(i), and to the extent

17 you elect to produce documents as they are kept in ordinary course of business, you must either

18 direct the Plaintiff to the specific location or locations within the files where the documents

19 responsive to each of the requests may be found and/or provide an index to assist the plaintiff in

20 locating responsive documents.

21    10. "COMMUNICATION" means any discussion, at a personal meeting or during a

22 telephone call, or any correspondence via mail, electronic mail, or any other medium, or any

23 enclosures or attachment to any correspondence.

24    11. "DESCRIBE" means to list the name or title or description of the item to be described

25 with sufficient clarity as to inform the reader of your answer, including what that item is in (for

26 example, a letter, memo or report) and what it concerns.

27    12. "TRAIN' or "TRAINING" means transmission to and receipt of information regarding

28 patient selection, insert method, indications for use, risks and benefits, success rates,

3    C:13-00490-TEH

alternatives, expected outcomes, patient or physician testimonials, promotional material, patient outcome and any written or electronic literature provided regarding Mirena.

13. "REPRESENTATIVE" means sales representatives, employees, agents, investigators, or other persons acting upon behalf of BAYER HEALTHCARE PHARMACEUTICALS.

14. "MEDICAL DEVICE ADVERSE EVENT REPORTS" means reports prepared and sent to the FDA of adverse events pursuant to 21 CFR 803 et seq.

15. "COMMUNITY PHYSICIANS FOR WOMEN" refers to the healthcare facility located at 7120 Clearvista Drive, Suite 2500, Indianapolis, Indiana, 46256.

16. "ANY" includes each, every, and all persons, places, or things to which the term refers.

17. The terms "AND" and "OR" are to be construed either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be considered to be beyond their scope.

18. "IDENTIFY" or "IDENTITY":

   a.      When used in reference to a natural person, mean to state the individual's full name, his or her present business and home address (or, if unknown, the last known business and home address), and his or her positions, business affiliations, and addresses at all times relevant to the Interrogatory in question.

   b.      When used in reference to a person other than a natural person, mean to state its full name, the address of its principal place of business, the nature of the entity, if known (e.g., type of government agency), and the principal persons involved with the entity at all times relevant to the Request in question.

19. "PERSON(S)" means any natural person or any firm, corporation, association, partnership, or other form of legal entity.

20. "ADDRESS" means complete street address (including mailbox number, if applicable), city, state and zip code. If a person has a P.O. Box address but not a street address, only then does ADDRESS mean complete P.O. Box address.

21. "INJURY" shall refer to the injury described in Plaintiffs' Second Amended Complaint.

22. "MIRENA" shall refer to an intrauterine device sold by Bayer that is small, T-shaped, and made of soft, flexible plastic, requiring a doctor's prescription and insertion in a doctor's office.

23. "MIRENA HOME PARTIES" are defined as events put on in collaboration between Defendant Bayer and Mom Central social networking site in the home of the consumer. These events include, but are not limited to, a Mom Central representative presentation and Mirena scripted product presentation by a nurse practitioner.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

Produce one copy of all  marketing DOCUMENTS, including sales material, brochures and pamphlets distributed to doctors, physicians and hospitals and clinics and Bayer's sales representatives regarding MIRENA.

**REQUEST FOR PRODUCTION NO. 2:**

Produce one copy of marketing DOCUMENTS, sales material, including internet and consumer advertisements, marketing brochures and pamphlets distributed prospective MIRENA users regarding the benefits and risks of MIRENA.

**REQUEST FOR PRODUCTION NO. 3:**

Produce all DOCUMENTS and/or data RELATING TO marketing or sales of MIRENA to COMMUNITY PHYSICIANS FOR WOMEN, including all sales representatives' notes, visit logs, and marketing material.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all communications and DOCUMENTS, including, but not limited to, e-mails and draft documents, used in the preparation of marketing pamphlets and brochures relating to the MIRENA.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all DOCUMENTS RELATING TO any MIRENA marketing training manuals or other such DOCUMENTS used for training sales representatives.

1    **REQUEST FOR PRODUCTION NO. 6**:

2        Produce all DOCUMENTS RELATING to MIRENA HOME PARTIES, including, but

3    not limited to, scripts, presentations and brochures.

4    **REQUEST FOR PRODUCTION NO. 7**:

5        Produce all DOCUMENTS used by BAYER to educate, train, and/or certify its

6    employees and representatives, including, but not limited to medical associates, sales

7    REPRESENTATIVES, clinical specialists, and physicians, RELATING to MIRENA.

8    **REQUEST FOR PRODUCTION NO. 8**:

9        Produce all DOCUMENTS RELATING TO marketing plans, brand strategies and other

10    such DOCUMENTS detailing the strategies and tactics BAYER employed to influence

11    physicians and other health care providers to increase the number of MIRENA prescriptions.

12    **REQUEST FOR PRODUCTION NO. 9**:

13        Produce all scripts and/or actual television, internet or social media advertisements for

14    MIRENA.

15    **REQUEST FOR PRODUCTION NO. 10**:

16        Produce all DOCUMENTS RELATED to Continuing Medical Education courses and

17    TRAINING for physicians and other medical professionals regarding MIRENA, including but

18    not limited to, handouts, pamphlets, informational books, and registration materials.

19    **REQUEST FOR PRODUCTION NO. 11**:

20        Produce all MIRENA-related instructional manuals and videos, TRAINING manuals

21    and videos, marketing materials, sales strategies, warnings or packaging labels or inserts or

22    similar documents from 2000 to present that YOU provided or otherwise directed to be provided

23    to any healthcare provider or physician prescribing MIRENA.

24    **REQUEST FOR PRODUCTION NO. 12**:

25        Produce all MIRENA-related prescription and sample data that YOU provided or

26    otherwise directed to be provided to any healthcare provider or physician prescribing MIRENA.

27    **REQUEST FOR PRODUCTION NO. 13**:

28        Produce all DOCUMENTS that RELATE or REFER to internal materials used by YOU

1  to TRAIN and/or certify MIRENA sales REPRESENTATIVES.

2  **REQUEST FOR PRODUCTION NO. 14**:

3  Produce all DOCUMENTS relating to post-testing MIRENA materials circulated to

4  physicians and healthcare providers, including but not limited to, reports, studies and videos.

5  **REQUEST FOR PRODUCTION NO. 15**:

6  Produce all labels, warnings and insertions for MIRENA from 2000 to present;

7  **REQUEST FOR PRODUCTION NO. 16**:

8  Produce all DOCUMENTS RELATING TO proposed working for the warnings, labels,

9  and package inserts for MIRENA, including but not limited to (i) drafts of proposed labels,

10  warnings, and package inserts, (ii) internal memoranda, analyses, correspondence, or other

11  documentation RELATING TO the wording or information to be included in the same, and (iii)

12  any analyses, studies, or discussions prepared by, for, or on behalf of BAYER RELATING TO

13  the effects of the same on sales or marketing of MIRENA.

14  **REQUEST FOR PRODUCTION NO. 17:**

15  Produce any and all documentation, reports, memorandum and/or any DOCUMENTS

16  REFERRING and/or pertaining label changes for MIRENA.

17  **REQUEST FOR PRODUCTION NO. 18**: Produce all reports, studies, research, adverse drug

18  event reports, clinical research information, post marketing safety surveillance information

19  relating to the effectiveness and safety of MIRENA conducted in the United States and at

20  BAYER's overseas divisions.

21  **REQUEST FOR PRODUCTION NO. 19**:

22  Produce all reports and/or DOCUMENTS from all clinical trials of MIRENA.

23  **REQUEST FOR PRODUCTION NO. 20**:

24  Produce any survey or compilation of medical or scientific literature and/or of

25  information and data from internal files prepared by, for, or on behalf of BAYER RELATING

26  to or regarding the safety and efficacy of MIRENA.

27

28

1  **REQUEST FOR PRODUCTION NO. 21**:

2      Produce all DOCUMENTS that show images of MIRENA embedded in the uterine

3  lining.

4  **REQUEST FOR PRODUCTION NO. 22**:

5      Produce all DOCUMENTS that show images of MIRENA embedded in the abdominal

6  cavity.

7  **REQUEST FOR PRODUCTION NO. 23**:

8      Produce all DOCUMENTS that disclose or discuss the risks associated with use of

9  MIRENA.

10  **REQUEST FOR PRODUCTION NO. 24**:

11      Produce all DOCUMENTS that disclose or discuss the risk of cysts associated with use

12  of MIRENA.

13  **REQUEST FOR PRODUCTION NO. 25**:

14      Produce any and all DOCUMENTS that disclose or discuss the risk of infections

15  associated with use of MIRENA.

16  **REQUEST FOR PRODUCTION NO. 26**:

17      Produce any and all DOCUMENTS that disclose or discuss the risk of abdominal pain

18  associated with use of MIRENA.

19  **REQUEST FOR PRODUCTION NO. 27**:

20      Produce all DOCUMENTS referring and RELATING TO the December 30th, 2009

21  correspondence from the Department of Health & Human Services to Dr. Fadwa Almanakly,

22  Pharm.D.

23  **REQUEST FOR PRODUCTION NO. 28**:

24      Produce all DOCUMENTS analyzing the risk or benefit of MIRENA compared to other

25  forms of birth control, including, but not limited to, Paraguard.

26  **REQUEST FOR PRODUCTION NO. 29**:

27      Produce all DOCUMENTS distributed to Georgia Steiman (or any other healthcare

28  provider) at COMMUNITY PHYSICIANS FOR WOMEN.

**REQUEST FOR PRODUCTION NO. 30**:

Produce all DOCUMENTS provided to COMMUNITY PHYSICIANS FOR WOMEN from 2000 to the present for the purpose of describing, promoting or discussing MIRENA.

**REQUEST FOR PRODUCTION NO. 31**:

Produce all DOCUMENTS that RELATE in any way to payments, awards, or compensation provided to Georgia Steiman (or any other healthcare provider) at COMMUNITY PHYSICIANS FOR WOMEN for promotion or sales of MIRENA.

**REQUEST FOR PRODUCTION NO. 32**:

Produce all call notes, written impressions or other DOCUMENTS associated with the sale or performance of MIRENA RELATING TO COMMUNITY PHYSICIANS FOR WOMEN.

**REQUEST FOR PRODUCTION NO. 33**:

Produce all DOCUMENTS that RELATE to Plaintiff Nicole Baker.

**REQUEST FOR PRODUCTION NO. 34**:

Produce all DOCUMENTS relating to BAYER's MEDICAL DEVICE ADVERSE EVENT REPORTS of MIRENA causing (i) cysts, (ii) infections and/or (iii) abdominal pain.

**REQUEST FOR PRODUCTION NO. 35**:

Produce all DOCUMENTS relating to BAYER's research, testing, risk assessment and reports RELATING to MIRENA causing (i) cysts, (ii) infections, and/or (iii) abdominal pain.

**REQUEST FOR PRODUCTION NO. 36**:

Produce any material data safety sheets, including testing, for MIRENA Lot T000206.

**REQUEST FOR PRODUCTION NO. 37**:

Produce all DOCUMENTS mentioned in BAYER's Initial Disclosures.

///

///

///

Dated February 20, 2014

AUDET & PARTNERS, LLP

William M. Audet (CA State Bar #117456)
waudet@audetlaw.com
Mark Burton (CA State Bar #178400)
mburton@audetlaw.com
Dana M. Isaac (CA State Bar #278848)
disaac@audetlaw.com
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone: 415.982.1776
Facsimile: 415.576.1776
*Attorneys for Plaintiff*

PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
PROPOUNDED TO DEFENDANT BAYER HEALTHCARE PHARMACEUTICALS, INC.